# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUALBERTO GONZALEZ, JR.,

Defendant.

Case No. 26-CR-2-JPS

**ORDER**

## 1. INTRODUCTION

On January 6, 2026, Defendant Gualberto Gonzalez, Jr. ("Gonzalez") was indicted for unlawfully possessing a firearm after having been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9). ECF No. 1. In February 2026, Gonzalez moved to dismiss the indictment on the grounds that the statute is unconstitutional, both facially and as applied to him. ECF No. 16. On April 3, 2026, Magistrate Judge William E. Duffin issued a report and recommendation (the "R&R"), recommending that this Court deny the motion to dismiss. ECF No. 21. Gonzalez objected to the R&R, ECF No. 24, and the Government responded to the objections, ECF No. 25. For the reasons explained below, the Court will adopt the R&R, overrule Gonzalez's objections, and deny the motion to dismiss.

## 2. STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, the Court is obliged to analyze de novo "those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*.

The Court's review encompasses both the magistrate judge's legal analysis and factual findings. *See id*.; *see also* FED. R. CRIM. P. 59(b)(2).

In this case, Gonzalez objects to Magistrate Judge Duffin's recommendation that the motion to dismiss should be denied because the statute is constitutional on its face and in application. To succeed on a motion to dismiss based on facial challenge, "the moving party must show that the statute is unconstitutional in all applications." *United States v. Rice*, 662 F. Supp. 3d 935, 937 (N.D. Ind. 2023) (citing *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015)). To succeed on an as-applied challenge, the moving party must demonstrate that the statute is unconstitutional as applied to the facts of the case and not necessarily any set of hypothetical facts. *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011) (citing *United States v. Sandsness*, 988 F.2d 970, 972 n.2 (9th Cir. 1993) and *United States v. Stephenson*, 557 F.3d 449, 456 (7th Cir. 2009)). Accordingly, the Court revisits Magistrate Judge Duffin's facial and as-applied analyses de novo.

3.      **BACKGROUND**

    **3.1      Factual Allegations**

In his R&R, Magistrate Judge Duffin carefully described all the factual allegations material to Gonzalez's motion. ECF No. 21 at 1–2. Gonzalez makes no objection to the facts as Magistrate Judge Duffin laid them out, *see generally* ECF No. 24, and the Court has no independent reason to disagree with the factual allegations as presented by Magistrate Judge Duffin. The Court will, therefore, adopt the factual allegations as described in the R&R and reproduce them below.

The indictment does not specifically plead Gonzalez's criminal history. ECF No. 21 (citing ECF No. 1). However, turning to the relevant state records, Gonzalez was adjudicated guilty of two misdemeanors (battery and disorderly conduct) in 2020. *State of Wisconsin v. Gualberto*

*Gonzalez Jr.*, Case No. 2019CF004238 (Milwaukee Cnty. Cir. Ct. 2019), *available* *at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2019CF004238&county No=40&index=0&mode=details ("First State Case").[1] According to the complaint, Gonzalez struck his live-in girlfriend during a public argument, pushed her to the ground, and punched her four to five times. ECF No. 16-1 at 1–3. In February 2020, the state court stayed both sentences, imposing twenty-four months of probation supervised by the Wisconsin Department of Corrections. First State Case, Feb. 5, 2020 docket entry. Gonzalez reports, and Wisconsin court records corroborate, he was successfully discharged from state supervision on March 3, 2023 and that he has had no criminal record since 2021 until his arrest on July 17, 2025—the event that gave rise to this case and the related prosecution in Milwaukee County. ECF No. 21 at 2 (citing ECF No. 16 at 3); *State of Wisconsin v. Gualberto Gonzalez Jr.*, Case No. 2025CF003329 (Milwaukee Cnty. Cir. Ct. 2025), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2019CF004238&county No=40&index=0&mode=details ("Second State Case"). According to the Government, that arrest was the result of a report by his live-in girlfriend that he brandished a firearm during an argument "and told her that if she called the police there would be six dead cops on the street." ECF No. 21 at 2 (citing ECF No. 19 at 2). Law enforcement responded and located the firearm described in the indictment. *Id.* (citing same).

### 3.2    Magistrate Judge Duffin's Findings

According to Magistrate Judge Duffin, "the understanding of the Second Amendment" has recently been "upended" by the Supreme Court's

---

[1]The Court can and will take judicial notice of state court records. *See United States v. Hemphill*, 447 F. App'x 733, 736 (7th Cir. 2011) (citing FED. R. EVID. 201(b) and *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977)).

decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). ECF No. 21 at 3. In turn, he says, a series of recent decisions have called into the question of the constitutionality of a gun restriction on possession of firearms. *Id*. (citing *United States v. Contreras*, No. 23-CR-185-WED, 2024 WL 1366974, at *1 (E.D. Wis. Apr. 1, 2024)). Neither the Seventh Circuit nor the Supreme Court have weighed in on *Bruen's* implications as to the constitutionality of 18 U.S.C. § 922(g)(9). *Id*. However, Judge Lynn Adelman, another judge in this District, has weighed in, rejecting a facial challenge and an as-applied challenge to the statute. *Id*. (citing *United States v. Jones*, No. 24-CR-70, ECF No. 24 (E.D. Wis. Nov. 24, 2024) (hereinafter the "*Jones* Case"). With that backdrop, Magistrate Judge Duffin examined Gonzalez's facial challenge before turning to whether there was any merit to his as-applied challenge. The Court summarizes each set of findings in turn.

### 3.2.1 Findings as to Gonzalez's Facial Challenge

As a starting point, Magistrate Judge Duffin notes that courts must "consider whether 'the Second Amendment's plain text covers an individual's conduct' and if so, whether the Government has 'affirmatively proven that its firearms regulation is part of the historical tradition that delimits that outer bounds of the right to keep and bear arms.'" ECF No. 21 at 4 (citing *Bruen*, 597 at 17–19). Because the Government waived any argument that the Second Amendment does not cover Gonzalez's conduct here, Magistrate Judge Duffin advanced to the second and final part of the question, for which "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id*. (quoting *United States v. Rahimi*, 602 U.S. 680, 692 (2024)). "Consistency does not require 'a dead ringer'; the government must 'identify a well-established and representative *historical* analogue, not

a historical *twin*.'" *Id*. (quoting *Bruen*, 597 U.S. at 30). As relevant here, "Section 922(g)(9) makes it a crime for anyone 'who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm.'" *Id*. at 5 (citing 18 U.S.C. § 922(g)(9)). A "misdemeanor crime of domestic violence" is defined as an offense that is:

> (i) a misdemeanor under . . . State . . . or local law;  and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim, or by a person who has a current or recent former dating relationship with the victim.

18 U.S.C. § 921(a)(33).[2]

According to Magistrate Judge Duffin, the *Rahimi* decision, even though it did not analyze the same subsection that is at bar here, supports the Government's position that Section 922(g)(9) is facially constitutional. *Id*. at 5–6 (noting that *Rahimi* Court analyzed 18 U.S.C. § 922(g)(8)(C)(i), which targets firearms in possession of those subject to a domestic restraining order for which there was an underlying finding of a credible threat to physical safety to the intimate partner or child); *see* 18 U.S.C. § 922(g)(8)(C)(i). The *Rahimi* Court, he says, found that there was tradition of disarming individuals who "pose[] a clear threat of physical violence to another," ECF No. 21 at 6 (quoting 602 U.S. at 698), and that the statute prohibiting those subject to domestic violence restraining orders from possessing firearms, 18 U.S.C. § 922(g)(8)(C)(i), fits within that tradition. *See*

---

[2]Although Magistrate Judge Duffin did not provide the full statute, the Court will include it here for the sake of comprehensibility.

Case 2:26-cr-00002-JPS    Filed 07/24/26    Page 5 of 17    Document 28

*id.*; *Rahimi*, 602 U.S. at 698 ("Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."). Based on this ruling, he concluded that "[t]he safety risk posed by those previously convicted of a 'misdemeanor crime of domestic violence' is consistent with that posed by people subject to domestic violence restraining orders, as well as the risks underpinning our nation's tradition of surety and going armed laws." ECF No. 21 at 7 (quoting *Rahimi*, 602 U.S. at 698).

In reaching this conclusion, Magistrate Judge Duffin rejected the notion that the facts could be distinguished from *Rahimi* insofar as the statute in that case "constrained" the length of the disarmament by the length of the restraining order. *Id*. at 6. He likewise did not find it compelling that the statute in that case further required "an express determination that the defendant pose[] a threat to his domestic relations." *Id*. After all, he says, "the predicate conviction under § 922(g)(9), which carries a higher burden of proof than a civil restraining order, requires an element that the defendant used or attempted to use physical force or threatened the use of a deadly weapon." *Id*. (citing 18 U.S.C. § 921(a)(33)(A)(ii)); 18 U.S.C. § 921(a)(33)(A)(ii) (a "misdemeanor crime of domestic violence" refers to an offense that "as an element," requires "the use or attempted use of physical force, or the threatened use of a deadly weapon").

### 3.2.2 Findings as to Gonzalez's As-Applied Challenge

Magistrate Judge Duffin also rejected Gonzalez's argument that § 922(g)(9) is unconstitutional as applied to him because he does not have a history of brandishing or discharging firearms unlawfully, and there was no firearm involved in his prior offenses. ECF No. 21 at 7. Magistrate Judge

Duffin likewise did not find it persuasive that Gonzalez already successfully discharged his probation obligations arising out of his First State Case prior to the instant allegations. *Id*. After all, Magistrate Judge Duffin noted, "Gonzalez does not cite a single case holding that § 922(g) is unconstitutional as applied to defendants who have completed their sentences for their prior convictions." *Id*. at 8. "Rather, to the extent courts have contemplated as-applied challenges, they have often focused on the distinction between violent and non-violent prior convictions, not whether the defendant completed a prior sentence." *Id*. (quoting *Jones* Case, ECF No. 24 at 11 (rejecting an as-applied challenge). "Gonzalez's prior conviction [in the First State Case] may not have involved a firearm, but it still involved the use of physical force against a domestic partner." *Id*. (citing ECF No. 16-1 at 1–3). As such, he concluded, "Gonzalez poses the threat to physical safety targeted by the statute, and it is constitutional as applied to him." *Id*.

### 3.3 Gonzalez's Objections

Next, the Court summarizes Gonzalez's objections to the magistrate's facial analysis before turning to his objections to the magistrate's as-applied analysis.

### 3.3.1 Facial Challenge

As it is so short, the Court will simply reproduce Gonzalez's objections to the R&R's handling of his facial challenge below:

> Mr. Gonzalez preserves his facial challenge. He acknowledges that facial relief is difficult where a statute may have constitutional applications. ECF No. 24 at 7 (citing *United States v. Prince*, 171 F.4th 1009, 1011 7th Cir. 2026)). That said, the Recommendation's broad rationale that every misdemeanor qualifying under 18 U.S.C. § 921(a)(33)(A)(ii) permanently establishes dangerousness sweeps too far. If facial relief is denied, it should be on narrow grounds that do not convert Rahimi's approval of temporary, threat-based

disarmament into approval of permanent disarmament for all
§ 922(g)(9) predicates. *Id*.

ECF No. 24 at 7.

### 3.3.2   As-Applied Challenge

Gonzalez contends that he can make an as-applied argument because the Seventh Circuit has rejected "only facial challenges[s] [to § 922(g)(1)] and expressly left open as-applied challenges where the predicate does not reflect dangerousness." ECF No. 24 at 5 (citing *United States v. Watson*, 171 F.4th 1012 (7th Cir. 2026) and *Prince*, 171 F.4th 1009). To support this position, he argues that, in *Watson*, the Seventh Circuit only upheld an as-applied challenge to § 922(g)(1) in a case involving a "felony drug dealer," in which it emphasized the dangerousness of that "specific [factual] predicate" and the "established connection between guns and drugs." *Id*. (citing *Watson*, 171 F.4th at 1023–24). In other words, none of the Seventh Circuit caselaw "precludes" the as-applied challenge that he makes. *Id*.

Rather, Gonzalez says, the existing caselaw makes clear that "the inquiry is individualized and specific to the predicate offense." *Id*.   In making that inquiry, he argues that "[i]t is not enough to say that Congress thought the statute served public safety, that domestic violence is serious, or that some people with domestic violence convictions may be dangerous." *Id*. at 3 (quoting *Rahimi*, 602 U.S. at 692). Rather, he argues, "*Bruen* and *Rahimi* require a historical analogue that is relevantly similar in both 'why' and 'how.' The government may not rely on analogies drawn at an abstract level of generality." *Id*. at 3–4 (quoting same).

As such, Gonzalez suggests, any analogy to *Rahimi* is erroneous, as the facts here involve a "permanent, irrevocable disarmament based solely on a prior misdemeanor conviction," whereas the facts in *Rahimi* involved

a "temporary restriction" based on a felony drug conviction. *Id*. at 4, 6. Moreover, Gonzalez argues, the "[G]overnment's position treats [his] prior misdemeanor conviction as a permanent determination that he remains a clear threat to physical safety, and so does the recommendation. But *Rahimi* involved a judicial finding of credible threat, and *Watson* involved a felony drug-dealing conviction that the Seventh Circuit characterized as inherently dangerous." *Id*. at 6. Gonzalez acknowledges the seriousness of his conviction but suggests that the Government "must show a historical tradition that supports the specific burden imposed by § 922(g)(9), including that it's permanent and doesn't require a current dangerousness finding." *Id*. at 7.

Further supporting his position, he suggests, is the fact that his First State Case was for "a misdemeanor, it didn't involve a firearm, it's years old, and he completed his term of probation several years ago." *Id*. at 6.

### 3.4 Government's Response

Next, the Court summarizes the Government's response to the facial challenge before turning to its response as to the as-applied challenge.

#### 3.4.1 Response to Facial Challenge

According to the Government, the statue is constitutional for the following reasons. ECF No. 25 at 3. First, it says, "surety laws and going armed restrictions have traditionally supported disarmament of classes of people, particularly those deemed dangerous." *Id*. (citing ECF No. 21 at 7). Second, Gonzalez "demands an exact correlation between a challenged firearms regulation and some historical 'twin,' but that kind of heightened burden has now been rejected by both the Supreme Court and the Seventh Circuit." *Id*. (citing *Watson*, 171 F.4th at 1019). The Government acknowledges that "§ 922(g)(9) applies to misdemeanants convicted of domestic violence, and not felons," but maintains that "*Watson* nonetheless

provides strong support for its constitutionality." *Id*. at 4 (citing same). After all, "historically, legislatures 'deemed groups dangerous and categorical disarmed them.'" *Id*. (citing *Watson*, 171 F.4th at 1019–20). "Thus, the emphasis was on dangerousness." *Id*. And, here, "Gonzalez stands convicted of an offense that involved threats to the physical safety of others" which was "clearly a dangerous one." *Id*.

For further support of its position that there is a historical analogue, the Government turns to a recent Ninth Circuit decision in a case involving a facial challenge to § 922(g)(9). *Id*. at 4–5 (noting that there was historical analogue to the statute insofar as surety laws served "[a]s a form of preventative justice, . . . [which] could be invoked to prevent all forms of violence, including spousal abuse and targeted the misuse of firearms" and that going armed laws "prohibited riding or going armed, with dangerous or unusual weapons, [to] terrify the good people of the land" (quoting *United States v. Martinez*, 169 F.4th 1147, 1153–54 (9th Cir. 2026) (internal quotation marks omitted))). The Government further points out that the *Martinez* court was unconcerned by the fact the ban was permanent in light of the circumstances of *Rahimi*; that is, the *Martinez* court noted that *Rahimi* Court upheld the lawfulness of § 922(g)(8), a conviction that is predicated on "mere allegations of domestic violence," whereas, in a successful prosecution of § 922(g)(9), the Government must present a prior conviction, not just allegations. *Id*. at 5 (citing *Martinez*, 169 F.4th at 1154). Further supporting its position is *Martinez's* findings concerning the recidivism rates in domestic violence cases, including that recurring domestic violence "is likely to become deadly when a firearm is present." *Id*. (citing *Martinez*, 169 F.4th at 1157). For these reasons, the Government concludes that the statute is facially valid.

### 3.4.2   Response to As-Applied Challenge

The Government argues that the Court should not entertain an as-applied challenge in this case to § 922(g)(9). *Id*. at 6. To the extent, however, *Watson* permits such challenges, the Government suggests that the Court should look at the fact that the underlying offense in this case is dangerous in nature, much like the felony drug conviction in *Watson*, and, in fact, is "arguably more [dangerous]" than that felony drug conviction. *Id*. While his "prior conviction may not have involved a firearm," the Government argues, "it still involved the use of physical force against a domestic partner." *Id*. at 7 (citing ECF No. 21 at 8).  That he completed his sentence in the First State Case is irrelevant. *See id*. at 6 (citing *Jones* Case, ECF No. 24 at 11). Thus, given these facts, the Government argues, Gonzalez's as-applied challenge is "doom[ed]." *Id*.

## 4.   LAW AND ANALYSIS

For the reasons set forth below, the Court agrees with the Government and Magistrate Judge Duffin and will overrule Gonzalez's objections.

### 4.1   Facial Challenge

The Court finds that the statute here, § 922(g)(9), is facially valid for the following reasons.[3] First, the *Rahimi* Court concluded, in no uncertain terms, that there was a tradition, in the form of "surety and going armed laws," of disarming citizens who "represent[] a credible threat to the

---

[3]Magistrate Judge Duffin correctly concluded that the Government waived any argument that the Second Amendment does not cover Gonzalez's conduct here. *See supra* Section 3.2.1. As such, the Court simply analyzes whether there is a "challenged regulation [that] is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 690; *see supra* Section 3.2.1. (explaining that this is the second and final step in the analysis of a facial challenge).

physical safety" of another, *see* § 922(g)(8)(C)(i), and the statute here is aimed at addressing these exact same concerns. *See United States v. Gailes*, 118 F.4th 822, 827 (6th Cir. 2024) (noting, while answering a facial challenge to § 922(g)(9), that "[d]omestic-violence convictions generally involve some sort of physical force" and that "[w]hen the presence of a gun accompanies the use of physical force, the likelihood that abuse turns to homicide greatly increases" (collecting authorities)); ECF No. 25 at 5 (citing *Martinez*, 169 F.4th at 1153–54, 1157) (making similar points). To require the Government to locate a more precise historical analogue than the collection of "surety and going armed laws" already identified by the Supreme Court is legally unnecessary, as this Court is not looking for a "historical twin." *Bruen*, 597 U.S. at 30; *see also Gailes*, 118 F.4th at 828 ("Although § 922(g)(9) 'is by no means identical' to the historical sources above or a founding-era regime, 'it does not need to be.'" (quoting *Rahimi*, 602 U.S. at 698)); ECF No. 25 at 3 (citing *Watson,* 171 F.4th at 1019). As such, the Court is not persuaded by Gonzalez's suggestion that the Government needs to locate a historical analogue in which a defendant could be disarmed for previously posing a threat —as opposed to presently posing a threat, as the statute in *Rahimi* required. *See Gailes*, 118 F.4th at 829. This argument is particularly unconvincing given that the "recidivism rate for domestic-offenders is high." *Id*. (also observing that "someone who posed a risk in the past does not mean they no longer do so"); ECF No. 25 at 5 (citing *Martinez*, 169 F.4th at 1154) (noting history of domestic violence is highly predictive of future violence).

That the *Rahimi* Court addressed § 922(g)(8)'s temporary firearm ban, as opposed to a permanent ban, does not change this conclusion. As the Government persuasively argues, to sustain a conviction under § 922(g)(9), the prosecution must point to a conviction, not mere

allegations—a showing that mitigates the Second Amendment concerns. ECF No. 25 at 5 (citing *Martinez*, 169 F.4th at 1154); *see also United States v. Hemani*, 146 S. Ct. 1677, 1692 n.6 (2026) ("Certain other provisions of § 922, such as subsections (g)(1) (disarming convicted felons) and (g)(4) (disarming any person "adjudicated as a mental defective" or "committed to a mental institution"), involve some manner of pre-deprivation process before an individual's Second Amendment rights are lost. For that reason, they differ from subsection (g)(3) and 'nothing in our opinion should be taken to cast doubt' on them."). Moreover, Gonzalez ignores that the ban may not even be "permanent" given that "domestic-violence misdemeanants 'can (1) petition to set aside their conviction; (2) seek a pardon; (3) have their conviction expunged; or (4) have their civil rights fully restored.'" *Gailes*, 118 F.4th at 829 (citing *Stimmel v. Sessions*, 879 F.3d 198, 207 (6th Cir. 2018); § 921(a)(33)(B)(ii); ECF No. 21 at 6 (citing ECF No. 19 at 8) (discussing same).

For all these reasons, the Court finds that § 922(g)(9) is constitutional on its face.

### 4.2    As-Applied Challenge

For the following reasons, the Court agrees with Magistrate Judge Duffin that the facts here are inapposite to an as-applied challenge to § 922(g)(9).

The Court starts with Gonzalez's main argument: that the Court must undertake an "individualized and specific" inquiry into the "predicate offense," which, if undertaken, leads to the conclusion that, as-applied, the statute is unconstitutional. ECF No. 24 at 3–7. This argument does not sway the Court. As an initial matter, Gonzalez's proposed line of inquiry into the predicate offense is unsubstantiated. ECF No. 24 at 5. As was true in the *Jones* Case, Gonzalez "presents no historical evidence

mandating an additional, individualized determination before a person convicted of a crime may be disarmed." *Jones* Case, ECF No. 24 at 11. In fact, the Court's research leads to the opposite conclusion. *See Rahimi*, 602 U.S. at 698 (noting that it did not mean to suggest "that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse" (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)); *Hemani*, 146 S. Ct. at 1692 n.6 (same); *cf. Atkinson v. Garland*, 70 F.4th 1018, 1023 (7th Cir. 2023) ("[A]lthough Atkinson has shown some support for the idea that a group's 'dangerousness' is what mattered to the Founders, he does not provide much historical basis for individualized assessments or for delineating between individuals who committed violent versus non-violent crimes [in the context of § 922(g)(1)]"); *cf. United States v. Gates*, No. 1:22-CR-00397-1, 2023 WL 5748362, at \*9 (N.D. Ill. Sept. 6, 2023) (same); *cf. United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) (finding that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"). As such, the Court finds that such an inquiry is unnecessary under § 922(g)(9). Even if such an inquiry were necessary, Gonzalez fails to explain "what the Founders would have viewed as a 'violent' crime and what evidence they would consider in making that determination." *Atkinson*, 70 F.4th at 1023.

True enough, absent further guidance from the Seventh Circuit or the Supreme Court, courts will continue to confront these issues. Therefore, to the extent the Court is nonetheless obligated to consider Gonzalez's as-applied argument, the Court will focus "on the distinction between violent and non-violent prior convictions." *Jones* Case, ECF No. 24 at 11 (noting that "to extent courts consider as-applied challenges" in cases like these, they

do so on this basis); *see also* ECF No. 25 at 6 (suggesting the court should consider the "dangerousness" of Gonzalez's conduct).

In this case, the Court concludes that the misconduct underlying his First State Case was, by any measure, violent and dangerous.[4] ECF No. 16-1 at 2 (according to the complaint, Gonzalez "grabbed her by her neck, lifted her off the ground and slammed her down, and then punched her about five times in her face"); ECF No. 21 at 2 (reciting same). To be sure, Gonzalez may not have committed a felony or used a firearm in his First State Case, but the Court has no reason—and Gonzalez offers none—to reach an opposing conclusion, particularly since Gonzalez has already been convicted by the state court. *See generally* First State Case (convicted of misdemeanor battery with "domestic abuse assessments"); *Jones* Case, ECF No. 24 at 11–12 (describing such a conviction as "an act of domestic violence"); *see also Hemani*, 146 S. Ct. at 1692 n.6 (suggesting that a statute is more likely to be facially valid if there is "some manner of pre-deprivation process" that is required to sustain a conviction); *see generally* First State Case (demonstrating that Gonzalez actually received such process).[5]

Any objection Gonzalez raises on the basis of the age of the conviction (that is, that it is six years old), is waived, as Gonzalez fails to cite

---

[4]To be clear, if the Government is correct that the Court is to ask whether Gonzalez's underlying crime was "dangerous" rather than "violent," the outcome would not change.

[5]Defense counsel argues that the Government cannot use the Second State Case to justify its prosecution, ECF No. 24 at 7, but does not argue that the Government cannot use the First State Case to do so. *See generally id*. The Court sees no reason that the Government cannot use the First State Case to defend the as-applied challenge. *See* 18 U.S.C. § 921(a)(33)(B) (noting that the defendant must have had a jury trial or entered a plea to be considered convicted under the statute); *see* First State Case, Feb. 5, 2020 docket entry (Gonzalez entered guilty plea as to both the battery and disorderly conduct charges); *see id.*, Feb. 6, 2020 docket entry (judgment of conviction entered).

to pertinent authority to show that the age of a prior conviction is relevant. *Rahn v. Bd. of Tr. of N. Ill. Univ.*, 803 F.3d 285, 295 (7th Cir. 2015) (noting such arguments are waived). For the same reason, any objection based on his completion of his sentence in his First State is also waived. *Id.*; *see also Jones* Case, ECF No. 24 at 11 (noting that, in any event, courts typically do not consider "whether the defendant completed a prior sentence" in evaluating as-applied challenges).

To the extent Gonzalez argues that the labelling of the crime as a felony or misdemeanor is dispositive, the Court disagrees; though, the Court still considers the labeling a relevant factor. *Rahimi*, 602 U.S. at 699 (noting that bans on firearm possession by felons are "presumptively lawful" (quoting *Heller*, 554 U.S. at 626); *cf. Welsh v. Wisconsin*, 466 U.S. 740, 761 (1984) (noting, in the Fourth Amendment context, that "an evaluation of the seriousness of particular crimes [for purposes of exigent entry] could not be confined to offenses defined by statute as misdemeanors") (White, J. and Rehnquist, J., dissenting). But, as just stated, the Court finds that, by any measure, the misconduct underlying his First State Case was violent and dangerous; to be sure, the misdemeanor label alone does not change that conclusion.

For all these reasons, the Court agrees with the Government that there was no as-applied constitutional violation.

### 5. CONCLUSION

For the foregoing reasons, will adopt Magistrate Judge Duffin's R&R, ECF No. 21, overrule Gonzalez's objections, ECF No. 24, and deny the motion to dismiss, ECF No. 16.

Accordingly,

**IT IS ORDERED** that Magistrate Judge William E. Duffin's Report and Recommendation, ECF No. 21, be and the same is hereby **ADOPTED**;

Defendant Gualberto Gonzalez, Jr.'s objections thereto, ECF No. 24, be and the same are hereby **OVERRULED**; and

**IT IS FURTHER ORDERED** that Defendant Gualberto Gonzalez, Jr.'s motion to dismiss, ECF No. 16, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of July, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge